LILIA BULGUCHEVA, ESQ.  (SBN 291374)
BULGUCHEVA LAW, p.c.
185 Front Street, Suite 107A
Danville, California 94526
Telephone: (925) 854-2926
Facsimile: (925) 886-8017
Email: *lilia@bulguchevalaw.com*

Attorneys for Plaintiff
LUIS HURTADO LUCERO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS HURTADO LUCERO,<br><br>Plaintiff,<br><br>v.<br><br>IRA SERVICES, INC.; IRA SERVICES TRUST COMPANY; APRIL CARRILLO; CHRISTOPHER F. LAZZARO dba LAZZARO & ASSOCIATES; WILLIAM BENSON PEAVEY, JR.; LIBER ABACI, INC.; ATLAS ENTERPRISE TECHNOLOGIES, LLC.; and DOES 1 – 20,<br><br>Defendants. | Case No.  3:18-cv-05395<br><br>COMPLAINT FOR DAMAGES FOR:<br><br>1. VIOLATIONS OF THE RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(c);<br><br>2. CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(d);<br><br>3. VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;<br><br>4. BREACH OF CONTRACT; and<br><br>5. AIDING AND ABETTING.<br><br>DEMAND FOR JURY TRIAL |

-1-
COMPLAINT FOR DAMAGES

Plaintiff LUIS HURTADO CARRILLO (hereinafter, "Plaintiff"), alleges the following on information and belief against Defendants IRA SERVICES, INC.; IRA SERVICES TRUST COMPANY; APRIL CARRILLO; CHRISTOPHER F. LAZZARO; WILLIAM BENSON PEAVEY, JR.; LIBER ABACI, INC.; ATLAS ENTERPRISE TECHNOLOGIES, LLC.; and DOES 1 – 20, (collectively, "Defendants").

## INTRODUCTION

1. Beginning in 2012, Defendants organized, promoted, administered, and sold rights to Plaintiff to participate in a self-directed individual retirement account ("IRA"), as that term is defined in Section 408 of the Internal Revenue Code, as amended (the "Program"). The key feature was the supposed ability to put money into the Program on a tax-free basis and draw a monthly tax-free income from this investment. However, Plaintiff discovered that the Program was created as an illegal Ponzi scheme, meant to take his entire savings.

2. Essentially, the Program was set up as follows:

- Plaintiff deposited all of his retirement funds into an account with IRA Services Trust Company for a five-year term beginning on January 1, 2013;
- The funds were then used to purchase private common stock and membership units in two companies, Liber Abaci, Inc. and Enterprise Technologies, LLC (later registered with the California Secretary of State as Atlas Enterprise Technologies, LLC);
- Plaintiff would receive a $2,000 monthly return on his investment - tax-free;
- At the end of the five-year term, in December 2017, Plaintiff could either terminate his investment and take out his money, or exercise his right to renew the Program for an additional five-year period.

- 2 -
COMPLAINT FOR DAMAGES

3. Defendants April Carrillo, Christopher F. Lazzaro dba Lazzaro & Associates, William Benson Peavey, Jr., Liber Abaci, Inc., and Atlas Enterprise Technologies, LLC, (collectively, the "RICO Enterprise"), conspired and had assigned roles in an associated-in-fact enterprise.

4. The RICO Enterprise convinced Plaintiff to join the Program. As was agreed, Plaintiff received his monthly payments in the early part of 2013. Since the second quarter of 2013, payments were made on a quarterly basis ($6,000 every three months). Plaintiff received payments through the end of the second quarter of 2014; however, the third quarter payment (due at the end of September 2014) was never made and Plaintiff hasn't received any payments since then.

5. Defendants IRA Services and IRA Services Trust Company, in their capacity as the Custodian and Administrator of Plaintiff's IRA account, provided quarterly financial statements to Plaintiff via U.S. mail. Plaintiff was charged Custodial Fees for their services ranging from $180-$360 per year.

6. The 2012 financial statements showed that Plaintiff had a Total Fair Market Value (also known as the Account Balance) of $335,069.03. That amount grew to $350,430.63 at the end of 2013 after the RICO Enterprise caused Plaintiff to rollover a separate annuity account into the Program. However, in September 2016, Plaintiff received a financial statement which showed that his Total Fair Market Value/Account Balance was $12,723.72. The cause of this significant drop was allegedly the share valuation of Liber Abaci, Inc., which went from $20 per share to $.160 per share.

7. The RICO Enterprise have violated and conspired to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1962(d), as well as California's Unfair Competition laws ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* In addition, each member of the RICO Enterprise breached the Program agreement. Finally, Defendants IRA Services,

Inc. and IRA Services Trust Company aided and abetted the RICO Enterprise's wrongful conduct as alleged in this Complaint.

## PLAINTIFF

8. Plaintiff Luis Hustado Lucero is an individual residing in Antioch, California.

## DEFENDANTS

9. Defendant IRA Services ("IRA Services") is a corporation organized and existing under the laws of the State of California, with its principal place of business in San Carlos, CA. Upon information and belief, IRA Services was the Administrator of the IRA account that was part of the Program.

10. Defendant IRA Services Trust Company ("IRA Trust Co.") is a business entity of unknown form organized and existing under the laws of the State of California, with its principal place of business in San Carlos, CA. Upon information and belief, IRA Trust Co. was the Custodian of the IRA account that was part of the Program and an affiliate of IRA Services.

11. On information and belief, Defendant April Carrillo ("Carrillo") is an individual residing in Campbell, California who, at all relevant times, held senior positions with Defendants Liber Abaci, Inc. and Atlas Enterprise Technologies, LLC.

12. On information and belief, Defendant Christopher F. Lazzaro dba Lazzaro & Associates ("Lazzaro") is an individual residing in Carmel, California who, at all relevant times, was the operator of the Program and wired the subject monthly payments into Plaintiff's bank account.

13. On information and belief, Defendant William Benson Peavey, Jr. ("Peavey") is an individual residing in San Francisco, California, who was an Authorized Representative on the IRA account that is part of the Program.

14. Defendant Liber Abaci, Inc. ("Liber Abaci") is a California corporation whose status with the California Secretary of State is now listed as "FTB Suspended" and lacks the capacity to defend itself in this action.

15. Defendant Atlas Enterprise Technologies, LLC ("AET") is a Wyoming limited liability company whose status with the California Secretary of State is now listed as "SOS/FTB Forfeited" and lacks the capacity to defend itself in this action.

16. The true names and capacities of the Defendants, DOES 1 through 20, whether individual, corporate, associate or otherwise, are unknown to Plaintiff at the time of filing this Complaint and Plaintiff, therefore, sues said Defendants by such fictitious names and will ask leave of court to amend this Complaint to show their true names or capacities when the same have been ascertained. Plaintiff is informed and believes, and therefore alleges, that each of the DOE Defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to Plaintiff as herein alleged.

## **VICARIOUS LIABILITY ALLEGATIONS**

17. Plaintiff is informed and believes, and on that basis alleges, that each member of the RICO Enterprise, including each of the DOE defendants, was the agent, ostensible agent, servant, aider and abettor, co-conspirator, partner, joint venturer, representative and/or associate of each defendant, and was at all times relevant herein acting within the course and scope of his, her or its authority as agent, ostensible agent, servant, aider and abettor, co-conspirator, partner, joint venturer, representative and/or associate, and with the knowledge, authorization, consent, permission, and/or ratification of each defendant. On information and belief, all actions of each member of the RICO Enterprise alleged herein were ratified and approved by the officers and/or managing agents of each defendant, whether DOE or otherwise.

**JURISDICTION AND VENUE**

18. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that certain of the claims alleged herein arise under federal law, namely RICO. This Court has supplemental jurisdiction over the state law claims.

19. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) in that all Defendants either reside in the Northern District of California and/or have an agent in this judicial district.

**GENERAL ALLEGATIONS**

**A. The Program**

20. Plaintiff was set to retire at the end of 2012 from his work as a maintenance technician at UCSF Hospital in San Francisco, CA. He had accumulated approximately $350,000 in retirement savings.

21. At around the same time, he was introduced to Defendant Peavey who presented himself as an attorney in the San Francisco Bay Area, knowledgeable in tax-free retirement planning.

22. Peavey further introduced Plaintiff to the other members of the RICO Enterprise, and together, they convinced Plaintiff to participate in the Program. The Program was also referred to as the "Lazzaro & Associates five-year trading portfolio."

23. Essentially, the Program was set up as follows:
- Plaintiff deposited all of his retirement funds into an account with IRA Services Trust Company for a five-year term beginning on January 1, 2013;

- 6 -
COMPLAINT FOR DAMAGES

- The funds were then used to purchase private common stock and membership units in two companies, Liber Abaci, Inc. and Enterprise Technologies, LLC (later registered with the California Secretary of State as Atlas Enterprise Technologies, LLC);
- Plaintiff would receive a $2,000 monthly return on his investment - tax-free;
- At the end of the five-year term, in December 2017, Plaintiff could either terminate his investment and take out his money, or exercise his right to renew the Program for an additional five-year period.

24. Pursuant to this understanding, Plaintiff wired and/or transferred the following funds into the IRA Services/IRA Trust Co. account number IRA330206:

- 10/03/2012 – Rollover from a prior IRA Plan - $15,640.71;
- 10/19/2012 – Transfer from JP Morgan Chase Account - $14,206.04;
- 10/29/2012 – Rollover from U of Cal. 403B - $305,446.24; and
- 1/18/2013 – Rollover from Life Ins. Annuity - $22,720.22.

25. Once these funds were deposited, Defendants IRA Services and IRA Trust Co. sent them to the members of the RICO Enterprise in the following manner:

- 12/03/2012 - A wire transfer to Liber Abaci, Inc. of $300,000 for the purchase of 15,000 private stock at $20.00 per share;
- 10/19/2012 – A payment to Atlas Management, Inc. of $10,000 for the purchase of 100 membership units of Atlas Enterprise Technologies, LLC at $100.00 per share; and
- 01/18/2013 – A payment to Liber Abaci, Inc. of $40,000 for the purchase of 2,000 private stock at $20.00 per share.

26. For a while, Plaintiff received his monthly payments pursuant to the

Program (first on a monthly basis and then on a quarterly basis in 2014). For example, Plaintiff received the following wire transfers from Chris F. Lazzaro into his Wells Fargo Bank account ending in 0710, among others:

- 01/07/2013 - $2,500;
- 02/05/2013 - $2,000; and
- 05/06/2013 - $2,000.

27.  In addition, Plaintiff was able to withdraw $7,000 from the Program, on or about August 21, 2013, which amount was transferred into Plaintiff's Wells F argo account by wire.

28.  However, Plaintiff did not receive the 2014 third quarter payment, which was due at the end of September 2014. Since then, Plaintiff has not received a single payment from the members of the RICO Enterprise and therefore sues for the return of all missing payments.

**B. The Quarterly Financial Statements**

29.  Beginning in September 2012, Plaintiff received his quarterly financial statements from IRA Trust Co. (sent by U.S. First Class Mail) which showed all activity pertaining to account number IRA330206. Specifically, the statements provided the share valuation of Abaci Liber and AET, any fees charged by IRA Services and IRA Trust Co., and the Fair Market Value currently in the account (a/k/a Account Balance).

30.  Between 2012 and September 2016, Plaintiff did not see anything unusual in his financial quarterly statements. The statements showed that the Account Balance his IRA account remained at approximately $350,000, based on the $20.00 per share valuation of Liber Abaci stock and $100.00 per share valuation of AET.

31. Then, in September 2016, Plaintiff received a quarterly financial statement that changed his life. The Account Balance suddenly dropped from approximately $350,050 to $12,723.72. It appears that the share valuation of Liber Abaci shares went from $20.00 per share to $.160 per share. No further explanation was provided.

32. Most importantly, the September 2016 statement provided that the Liber Abaci shares were valued at **"$.160 on 11/30/2012**," which means that IRA Services and IRA Trust Co. were aware that the share valuation of Liber Abaci stock was actually much lower than what they were reporting to Plaintiff between 2013 and 2016. This is particularly distressing since IRA Services and IRA Trust Co. wired money out of Plaintiff's account in the amount of $40,000 on January 18, 2013 for the purchase of additional 2,000 Liber Abaci shares, when they knew that the shares were actually valued at $0.16.

33. Realizing this discrepancy, IRA Services and IRA Trust Co. mailed a corrected statement on or about December 31, 2016, which changed the date of the $0.16 share valuation from **11/30/2012** to **3/31/2013**.

34. During all relevant times, the AET share valuation of $100 per share has not changed and the latest quarterly statement shows that Plaintiff still has $10,000 in the IRA account.

35. Plaintiff has recently learned that Liber Abaci and AET were created shortly before Plaintiff's participation in the Program, solely for the purpose of defrauding him. Both of these companies have been suspended by the Franchise Tax Board as of October 2014. Moreover, Plaintiff is not able to withdraw the remaining assets in the IRA Services account because Liber Abaci and AET cannot be contacted.

# FIRST CAUSE OF ACTION

## RICO, 18 U.S.C. § 1962(c),

### Against All Defendants, Except IRA Services and IRA Trust Co.

36. Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

37. At all relevant times, there existed an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) that consisted of multiple distinct entities and/or individuals associated in fact, including Carrillo, Lazzaro, Peavey, Liber Abaci, and AET. Defendants Carrillo, Lazzaro, Peavey, Liber Abaci, and AET are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c) and distinct from the "enterprise" they formed and operated to perpetrate the fraud alleged in this Complaint.

38. Members of the RICO Enterprise, and each of them, conducted this enterprise on an ongoing basis beginning in 2012 and continuing for at least the next four years. Through the conduct of this enterprise, the RICO Enterprise has used the illegal and wrongful means alleged elsewhere in this Complaint to convince Plaintiff to participate in their Program and purchase private common stock and membership units in Liber Abaci and AET.

39. Each member of the RICO Enterprise participated in the conduct of this enterprise in furtherance of a common purpose that all members of the RICO Enterprise agreed upon – the sale of participation rights in the Program and the sale of private common stock and membership units through material misstatements and material omissions.

40. Each member of the RICO Enterprise have reinvested the proceeds of this scheme to defraud in the continuing enterprise.

41. Through explicit and/or tacit agreements, Defendants and other members of the RICO Enterprise agreed to function and did function as a unit and according to specified roles.

42. The conduct alleged in this Complaint was part of a scheme that the members of the RICO Enterprise formulated to defraud Plaintiff. Each member of the RICO Enterprise perpetrated this scheme with the specific intent to deceive and/or defraud Plaintiff, and did deceive and/or defraud Plaintiff.

43. The members of the RICO Enterprise committed a continuous series of predicate acts of mail and wire fraud (18 U.S.C. §§ 1341 and 1343) alleged in paragraphs 24 through 33 of this Complaint in furtherance of this scheme.

44. The predicate acts alleged in this Complaint constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c). The RICO Enterprise's conduct, including the predicate acts and pattern of racketeering activity, amount to and/or pose a threat of continued criminal conduct.

45. Plaintiff suffered harm and/or injury to his person or property as a direct and proximate result of the RICO Enterprise's wrongful conduct, including but not limited to damages caused by inducing him to invest in the Program as opposed to a reasonable alternative investment. Under the provisions of RICO, Plaintiff is entitled to recover treble damages, costs of suit and attorneys' fees.

## SECOND CAUSE OF ACTION
### RICO, 18 U.S.C. § 1962(d),
### Against All Defendants

46. Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

47. In violation of 18 U.S.C. 1962(d), members of the RICO Enterprise, and each of them, by their words and/or actions, objectively manifested an agreement to participate, directly and/or indirectly, in the scheme to defraud and the

RICO enterprise alleged in this Complaint and thereby conspired with one another to commit the conduct alleged in this Complaint.

48. Members of the RICO Enterprise, and each of them, by their words and/or actions, objectively manifested an agreement on the common purpose of this enterprise, *i.e.*, the sale of participation rights in the Program, the sale of private common stock and membership units through fraudulent means and/or a pattern of racketeering activity, and the reinvestment of the proceeds of that misconduct in their common enterprise.

49. Further, members of the RICO Enterprise, and each of them, by their words and/or actions, objectively manifested an agreement to perpetrate this scheme through predicate acts amounting to a pattern of racketeering activity. Members of the RICO Enterprise, and each of them, agreed to commit predicate crimes, aid and abet the commission of predicate crimes by other members of the enterprise, and/or that some members of the enterprise would commit the predicate acts for the benefit of all members and/or the enterprise.

50. Plaintiff suffered harm and/or injury to his person or property as a direct and proximate result of the RICO Enterprise's wrongful conduct, including but not limited to damages caused by inducing them to invest in the Program as opposed to a reasonable alternative investment. Under the provisions of RICO, Plaintiff is entitled to recover treble damages, costs of suit and attorneys' fees.

### THIRD CAUSE OF ACTION
**California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.***
**Against All Defendants, Except**

51. Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

52. The UCL prohibits anything that constitutes an unfair, unlawful or deceptive business practice. Cal. Bus. & Prof. Code § 17200. The UCL authorizes

a private right of action by anyone who has suffered injury in fact and allows recovery of amounts which may be necessary to restore to any person in interest any money or property which may have been acquired by means of any practice that violates the UCL.  Cal. Bus. & Prof. Code § 17203.

53. Defendants' conduct violated the deceptive/fraudulent prong of the UCL in that Defendants' common marketing plan, which misstated material facts and failed to disclose material facts, was deceptive and likely to deceive Plaintiff who was misled about the true nature of the Program.

54. Defendants' practices also violated the UCL's "unfair" prong in that they offended established federal tax policy.  Defendants' practices were also unfair because the harm caused to Plaintiffs greatly outweighs any benefits associated with these practices.

55. Had Plaintiff been aware of the material information that Defendants failed to disclose and the material misstatements of fact, he never would have agreed to join Defendants' Program, or purchased the Shares through the IRA Services Account.  Thus, as a result of Defendants' unlawful practices alleged above, Plaintiff has suffered injury in fact and lost money or property.

56. Defendants have derived substantial revenues from their wrongful and deceptive acts.  Plaintiff has been deprived of property to which he id entitled and/or in which he has a vested interest by means of Defendants' unlawful, fraudulent and unfair business practices.  Pursuant to Business & Professions Code § 17203, Plaintiff is entitled to an order requiring Defendants to restore to Plaintiff all the money or property which Defendants may have acquired by means of such unfair competition.

///
///
///

COMPLAINT FOR DAMAGES

## FOURTH CAUSE OF ACTION

### Breach of Contract

### Against All Defendants, Except IRA Services and IRA Trust Co.

57. Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

58. Plaintiff entered into an agreement to participate in the Program with Defendants Lazzaro, Carrillo, Peavey, Liber Abaci and AET as alleged throughout this Complaint (the "Contract").

59. Plaintiff performed all, or substantially all, of the significant things that the Contract required him to do, and/or he was excused from doing those things. All conditions required by the Contract for Defendants' performance occurred and/or were excused.

60. In the Program agreement, Defendants Lazzaro, Carrillo, Peavey, Liber Abaci and AET, and each of them, promised to pay $2,000 per month. The payment structure changed to $6,000 per quarter starting in the middle of 2013.

61. In addition, Plaintiff was supposed to be able to take his investment funds out of the Program at the end of the Contract term (in December 2017). However, this option was not available to him since the Ponzi scheme was uncovered and a significant portion of Plaintiff's money is no longer in the IRA account.

62. Defendants, and each of them, materially breached the Contract by the conduct described above, including not limited to the conduct described in the above paragraphs.

63. Defendants' breach of the contract is a material breach warranting damages in an amount to be proved at trial.

///

///

## FIFTH CAUSE OF ACTION

### Aiding and Abetting

### Against Defendants IRA Services and IRA Trust Co.

64. Plaintiff incorporates by reference the allegations contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

65. At all relevant times, Defendants IRA Services and IRA Trust Co. knew that the conduct of the other members of the RICO Enterprise constituted a breach of legal duties owed to Plaintiff and/or was otherwise tortious.

66. Defendants IRA Services and IRA Trust Co. nonetheless acted in concert with the other members of the RICO Enterprise pursuant to a common design, gave substantial assistance or encouragement to the wrongful or unlawful conduct alleged herein, and/or gave substantial assistance to the others in accomplishing a tortious result.

67. As a proximate and direct result of IRA Services and IRA Trust Co. aiding and abetting the other members of the RICO Enterprise, Plaintiff was damaged as alleged above and in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For special damages according to proof;
2. For general damages according to proof;
3. For attorneys' fees and costs according to proof;
4. For restitution of all monies paid to the Defendants according to proof;
5. For punitive and/or exemplary damages according to proof;
6. For pre-judgment and post-judgment interest;
7. For such other and further relief as the Court may deem proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  August 31, 2018

BULGUCHEVA LAW, p.c.

By: */s/ Lilia Bulgucheva*
     Lilia Bulgucheva, Esq.

*Attorneys for Plaintiff*