UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| LUIS HURTADO LUCERO,<br><br>Plaintiff,<br><br>v.<br><br>IRA SERVICES, INC., et al.,<br><br>Defendants. | Case No. 18-cv-05395-LB<br><br>**ORDER GRANTING IRA DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF No. 81 |

**INTRODUCTION**

Plaintiff Luis Hurtado Lucero alleges that he was defrauded into placing his retirement savings of approximately $350,000 into a self-directed individual retirement account ("IRA") program — the "Lazzaro & Associates five-year trading portfolio" — on the premise that the Program would pay him $2,000 a month, tax free, for five years, and then return his principal. Per the Program, Mr. Lucero's retirement savings were used to buy shares in two companies: Liber Abaci, Inc. and Enterprise Technologies, LLC, later registered with the California Secretary of State as Atlas Enterprise Technologies, LLC. The Program turned out to be an illegal Ponzi scheme — Mr. Lucero alleges that the two companies were created solely for the purpose of defrauding him out of his savings. The companies are now defunct and their shares proved to be nearly worthless.

In this lawsuit, Mr. Lucero sued Christopher Lazzaro and William Benson Peavey, who allegedly ran the Ponzi scheme, and IRA Services, Inc. and IRA Services Trust Company

ORDER – No. 18-cv-05395-LB

(collectively, "IRA Defendants"), the custodian and administrator of Mr. Lucero's IRA account, and raised the following claims:

1. a scheme to defraud, in violation of the Racketeer Influenced Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c), based on predicate acts of alleged mail and wire fraud, against all defendants,
2. a scheme to defraud, in violation of the RICO Act, 18 U.S.C. § 1962(d), against all defendants,
3. unfair and fraudulent conduct, in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., against Messrs. Lazzaro and Peavey,
4. breach of contract, against Messrs. Lazzaro and Peavey, and
5. aiding and abetting, against the IRA Defendants.

The IRA Defendants move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). The court held a hearing and grants the IRA Defendants' motion to dismiss because (1) a plaintiff cannot plead a RICO claim where the alleged fraud was in connection with the purchase or sale of securities and (2) Mr. Lucero does not adequately plead an underlying breach of duty that the IRA Defendants aided and abetted and does not plead that the IRA Defendants had actual knowledge of or substantially assisted that breach. The court dismisses the RICO claims with prejudice. The court dismisses the aiding-and-abetting claim without prejudice and grants Mr. Lucero leave to amend.

## STATEMENT[1]

### 1. The Program and Buying Shares

In 2012, Mr. Lucero, a maintenance technician at the UCSF Hospital in San Francisco, was set to retire with approximately $350,000 in savings.[2] Around this time, he was introduced to Mr.

---

[1] Unless otherwise stated, the facts in the Statement are allegations from the First Amended Complaint ("FAC") and are presumed to be true for the purposes of this order.

[2] FAC – ECF No. 74 at 7 (¶ 23).

ORDER – No. 18-cv-05395-LB   2

Peavey, who presented himself as an attorney in the San Francisco Bay Area knowledgeable in tax-free retirement planning.[3] Mr. Peavey introduced Mr. Lucero to "other members of the RICO Enterprise," and they convinced Mr. Lucero to participate in a program called the "Lazzaro & Associates five-year trading portfolio" ("Program").[4]

The Program was purportedly set up such that Mr. Lucero would deposit all of his retirement funds into an account with IRA Services Trust Company for a five-year term beginning on January 1, 2013.[5] The funds were to be used to buy stock in two companies, Liber Abaci, Inc. and Enterprise Technologies, LLC, later registered with the California Secretary of State as Atlas Enterprise Technologies, LLC ("AET").[6] Mr. Lucero then was to receive a $2,000 monthly return on his investment, tax free.[7] After five years, in December 2017, Mr. Lucero would be able to either terminate his investment and take out his principal investment, or exercise a right to renew the Program for another five years.[8]

Between October 2012 and January 2013, Mr. Lucero transferred $358,013.21 into an IRA Services or IRA Services Trust Company account.[9] The IRA Defendants were the administrator and custodian of this account (and charged custodial fees of $180–360 a year).[10] In October 2012, the IRA Defendants transferred $10,000 out of Mr. Lucero's account to Atlas Management, Inc. to buy 100 membership units of AET at $100 per share.[11] Over December 2012 and January 2013, the IRA Defendants transferred $340,000 out of Mr. Lucero's account to Liber Abaci to buy 17,000 shares of Liber Abaci stock at $20 per share.[12]

---

[3] *Id.* (¶ 24).
[4] *Id.* (¶ 25).
[5] *Id.* (¶ 26).
[6] *Id.*
[7] *Id.*
[8] *Id.* at 8 (¶ 26).
[9] *Id.* (¶ 27).
[10] *Id.* at 3 (¶ 5).
[11] *Id.* at 8 (¶ 28).
[12] *Id.*

### 2. Monthly Payments

For a while, Mr. Lazzaro sent Mr. Lucero his monthly payments pursuant to the Program (first on a monthly basis and then on a quarterly basis).[13] In September 2014, however, Mr. Lucero did not receive his 2014 third-quarter payment.[14] He has not received another payment from the Program since that time.[15]

### 3. Account Statements and Reported Account Values

Mr. Lucero received quarterly financial statements from IRA Services Trust Company showing all activity pertaining to his account, including the share valuation and fair-market value of his Liber Abaci and AET holdings.[16] Between 2012 and September 2016, the statements reported that his account balance remained at approximately $350,000, with his Liber Abaci and AET share valuations remaining at $20 and $100, respectively.[17]

In September 2016, the share valuation of his Liber Abaci shares, as reported on his account statement, dropped from $20 per share to $0.16 per share, dropping his account balance from approximately $350,050 to $12,723.72.[18] The statement said that the Liber Abaci shares were valued at $0.16 per share "on 11/30/2012."[19] No further explanation was provided.[20] Mr. Lucero alleges that "[t]his is particularly distressing since IRA Services and IRA Trust Co. wired money out of Plaintiff's account in the amount of $40,000 on January 18, 2013" — i.e., after November 30, 2012 — "for the purchase of additional 2,000 Liber Abaci shares, when they knew that the

---

[13] *Id.* 8−9 (¶ 29).
[14] *Id.* at 9 (¶ 31).
[15] *Id.*
[16] *Id.* at 9–10 (¶ 32).
[17] *Id.* at 10 (¶ 33).
[18] *Id.* (¶ 34).
[19] *Id.* (¶ 35).
[20] *Id.* (¶ 34).

ORDER – No. 18-cv-05395-LB    4

shares were actually valued at $0.16."[21] In December 2016, the IRA Defendants mailed Mr. Lucero a corrected account statement that changed the date of the $0.16 Liber Abaci share valuation from "11/30/2012" to "3/31/2013."[22]

Mr. Lucero alleges that each of the defendants knew that the share valuation of Liber Abaci stock at the time that Mr. Lucero invested his retirement savings (i.e., late 2012) was $0.16 per share instead of the $20 share price Mr. Lucero paid for the stock.[23] Specifically, Mr. Lucero alleges that Mr. Peavey held an account with the IRA Defendants and, in November 2012, bought 25,000 shares of Liber Abaci at $0.16 per share.[24] IRA Services Trust Company administered this transaction, as evidenced by the company stamp on the subscription agreement.[25] Despite Mr. Peavey's having bought Liber Abaci shares for $0.16 a share in November 2012, the IRA Defendants then transferred $300,000 directly to Liber Abaci's bank account — without any authorization from Mr. Lucero — to buy Liber Abaci shares at $20 per share in December 2012.[26] IRA Services Trust Company administered this transaction as well, as evidenced by the company stamp on the subscription agreement.[27] The IRA Defendants then transferred an additional $40,000 into Liber Abaci's bank account to buy additional Liber Abaci shares at $20 per share in January 2013.[28] Mr. Lucero alleges that the IRA Defendants knew of the $0.16 share valuation at the time Mr. Lucero purchased his Liber Abaci shares but falsely reported the shares as valued at $20 per share through September 2016, before "inadvertently" disclosing the $0.16 share valuation.[29]

---

[21] *Id.* (¶ 35).
[22] *Id.* at 11 (¶ 36).
[23] *Id.* (¶¶ 39−40).
[24] *Id.* (¶ 40)
[25] *Id.*
[26] *Id.* at 12 (¶¶ 41–42).
[27] *Id.* (¶ 41).
[28] *Id.*
[29] *Id.* (¶ 43); *see also id.* at 11 (¶ 39).

### 4. Aftermath

Both Liber Abaci and AET were suspended by the Franchise Tax Board as of October 2014.[30]

Mr. Lucero is not able to withdraw the remaining assets in his IRA Services account because Liber Abaci and AET cannot be contacted.[31]

Mr. Lucero recently learned that both Liber Abaci and AET were created shortly before he began participating in the Program.[32] He alleges that the companies were created for the sole purpose of defrauding him, with the money that was used to buy shares in those companies then being transferred to Messrs. Peavey and Lazzaro.[33]

# STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

---

[30] *Id.* at 11 (¶ 38).

[31] *Id.*

[32] *Id.*

[33] *Id.* at 4 (¶ 10), 12 (¶ 42).

ORDER – No. 18-cv-05395-LB    6

unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

Civil RICO claims based on predicate acts of mail and wire fraud are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557–58 (9th Cir. 2010). Rule 9(b) states that in alleging fraud or mistake, a party must state the circumstances constituting fraud or mistake "with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (en banc). "To satisfy Rule 9(b)'s particularity requirement, the complaint must include 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (some nested internal quotation marks omitted) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). "In other words, the pleading 'must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Id.* (some nested internal quotation marks omitted) (quoting *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013)).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (citations and internal quotation marks omitted). But "leave to amend may be denied when a plaintiff has demonstrated a 'repeated failure to cure deficiencies by amendments previously allowed.'" *Id.* at 1183 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)).

# ANALYSIS

## 1. RICO

### 1.1 Governing Law

"Under RICO, it is 'unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.'" *Sanford*, 625 F.3d at 557 (quoting 18 U.S.C. § 1962(c)).

"'To state a claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Id.* (quoting *Odom*, 486 F.3d at 547). "'[R]acketeering activity' is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud, wire fraud and obstruction of justice." *Id.* (some nested internal quotation marks omitted) (quoting *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004)).

"Section 1962(d) of RICO provides that '[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.'" *Id.* at 559 (quoting 18 U.S.C. § 1962(d). "'Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.'" *Id.* (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir.2000)).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") amended the RICO Act to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c).

### 1.2 Application

Mr. Lucero alleges that the defendants, including the IRA Defendants, "participated in the conduct of this enterprise in furtheranc of a common purpose that all members of the RICO Enterprise agreed upon — . . . the sale of private common stock and membership units through material misstatements and material omissions" and that they defrauded him into "purchas[ing]

private common stock and membership units in Liber Abaci and AET."[34] In other words, the lynchpin of the alleged scheme was the purchase and sale of stock and conduct (material misstatements or omissions in connection with the purchase or sale of stock) that would be actionable as securities fraud. As such, the PSLRA bars Mr. Lucero's RICO claim. *Cf. Swartz*, 476 F.3d at 761 (dismissing RICO claim as barred by the PSLRA where "[n]either was the sale of securities 'incidental' to the fraud. The sale of the [] stock was the lynchpin of the [] scheme.").

Mr. Lucero maintains that he cannot bring a securities-fraud claim against the IRA Defendants because "actions sounding in securities fraud arising out of self-directed IRAs are not actionable against custodians such as the IRA Defendants."[35] Mr. Lucero argues that because he cannot sue the IRA Defendants for securities fraud, the PSLRA bar does not apply and does not prevent him from suing them under RICO.[36] Not so. The PSLRA bar does not turn on whether a given defendant would be liable under the securities laws. Rather, "Section 1964(c) proscribed using as a predicate 'any *conduct* that would have been actionable as [securities] fraud.'" *Howard*, 208 F.3d at 749 (emphasis and brackets in original) (quoting 18 U.S.C. § 1964(c)). "'The language of the statute simply does not require that, for a RICO claim to be barred, the plaintiff who sues under RICO must be able to sue under securities laws, or that the conduct actionable as securities fraud on which the plaintiff relies to establish the RICO violation must be that of the defendant.'" *Pritikin v. Comerica Bank*, No. C 09-03303 JF (RS), 2009 WL 3857455, at *4 (N.D. Cal. Nov. 17, 2009) (some nested internal quotation marks omitted) (quoting *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 281–82 (S.D.N.Y. 2009)); *accord MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011) ("[18 U.S.C. § 1964(c)] bars civil RICO claims alleging predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud action against the defendant."). Regardless of whether Mr.

---

[34] FAC – ECF No. 74 at 13 (¶¶ 47–48).

[35] Pl. Opp'n – ECF No. 86 at 14.

[36] *Id.* at 14–15.

Lucero can sue the IRA Defendants for securities fraud, the lynchpin of the alleged scheme was securities fraud, and as such, 18 U.S.C. § 1964(c) bars Mr. Lucero's RICO claims.

Because the PSLRA bar is a legal bar, Mr. Lucero cannot overcome it by pleading additional facts. The court therefore dismisses Mr. Lucero's RICO claims against the IRA Defendants with prejudice. *Cf. Swartz*, 476 F.3d at 761 ("Because the PSLRA bar would apply under any internally consistent set of facts, it would be futile to amend the RICO claim. Consequently, it was not error to dismiss this claim with prejudice.").[37]

## 2. Aiding and Abetting

### 2.1 Governing Law

"California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort. 'Liability may be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'" *Casey v. U.S. Bank N.A.*, 127 Cal. App. 4th 1138, 1144 (2005) (some nested internal quotation marks omitted) (quoting *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318 1325–26 (1996)). "[I]n order to analyze the sufficiency of a claim for aiding and abetting breach of fiduciary duty, [a court] must first 'identify precisely the breach of fiduciary duty for which [the plaintiff] seeks to hold [the defendants] liable.'" *Id.* at 1149 (quoting *Sharp Int'l Corp. v. State St. Bank and Trust Co.*, 281 B.R. 506, 513 (E.D.N.Y. 2002)).

"[L]iability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." *Id.* at 1145. "[S]uspicion and surmise

---

[37] The IRA Defendants raise a number of other arguments as to why Mr. Lucero's RICO claims against them purportedly are deficient, including that Mr. Lucero did not plead the predicate acts of mail fraud and wire fraud with particularity as required by Rule 9(b), did not plead causation, did not plead facts establishing a RICO enterprise, and did not plead that the IRA Defendants had a "meeting of the minds" sufficient to enter into an alleged conspiracy. In light of the court's dismissal of Mr. Lucero's RICO claims as barred by the PSLRA, it need not reach these other arguments.

ORDER – No. 18-cv-05395-LB 10

do not constitute actual knowledge." *Id.* at 1147 (quoting *Sharp*, 281 B.R. at 515). "[G]eneral allegation[s] the [defendant] knew the [primary wrongdoers] were involved in 'wrongful or illegal conduct' does not constitute sufficient pleading that the [defendant] had actual knowledge" of a specific breach of duty sufficient to plead an aiding-and-abetting claim. *Id.* at 1152.

### 2.2 Application

Mr. Lucero has not identified precisely what the underlying breach of duty is that he claims the IRA Defendants aided and abetted, much less plead that the IRA Defendants (1) had actual knowledge of that breach and (2) substantially assisted that breach.[38] Mr. Lucero thus fails to plead an aiding-and-abetting claim against the IRA Defendants.

# CONCLUSION

The court grants IRA Defendants' motion to dismiss. The court dismisses the RICO claims against the IRA Defendants with prejudice and dismisses the aiding-and-abetting claim against the IRA Defendants without prejudice.

Mr. Lucero may file an amended complaint within 21 days of the date of this order. (If he files an amended complaint, he must also file as an attachment a blackline of his new amended complaint against his current First Amended Complaint.)

**IT IS SO ORDERED.**

Dated: November 7, 2019

LAUREL BEELER
United States Magistrate Judge

---

[38] *Cf.* FAC – ECF No. 74 at 18 (¶¶ 74–76) (alleging only that "At all relevant times, Defendants IRA Services and IRA Trust Co. knew that the conduct of the other members of the RICO Enterprise constituted a breach of legal duties owed to Plaintiff and/or was otherwise tortious. Defendants IRA Services and IRA Trust Co. nonetheless acted in concert with the other members of the RICO Enterprise pursuant to a common design, gave substantial assistance or encouragement to the wrongful or unlawful conduct alleged herein, and/or gave substantial assistance to the others in accomplishing a tortious result. As a proximate and direct result of IRA Services and IRA Trust Co. aiding and abetting the other members of the RICO Enterprise, Plaintiff was damaged as alleged above and in an amount to be determined at trial.").